**FILED**
**Oct 08, 2020**
**03:02 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **VERNETTA FARMER,** | ) | **Docket No.: 2019-08-0798** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ARLINGTON COMM. SCHOOLS,** | ) | **State File No.: 16979-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **KEY RISK INS. CO.,** | ) | **Judge Deana Seymour** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

This case came before the Court for a Compensation Hearing on September 9, 2020. Vernetta Farmer sustained compensable injuries on March 8, 2017, while working for Arlington Community Schools. At issue is Ms. Farmer's entitlement to additional temporary and permanent disability benefits.[1] For the following reasons, the Court holds she is entitled to additional temporary benefits but not permanent disability benefits.

### History of Claim

On March 8, 2017, Ms. Farmer hit her head on the floor when a child pulled a chair out from under her. She went to the emergency room with head, face, neck, and back pain with dizziness. After receiving a diagnosis of acute head injury and neck pain, she was discharged but continued to have symptoms. The next week, Ms. Farmer saw her primary care physician, who referred her to a neurologist.

ACS authorized treatment with neurosurgeon Dr. Fereidoon Parsioon. Ms. Farmer presented with bitemporal headaches, postural cervical and interscapular pain, occasional

---

[1] The parties agreed that ACS paid all medical and temporary disability benefits except for the disputed temporary disability benefits from October 31, 2017, to May 23, 2018, and from August 9, to September 17, 2018. *See* Appendix for all stipulations.

1

forgetfulness, pressure in her ears, dizziness, and blurred vision. She had not worked since the accident. Dr. Parsioon reviewed Ms. Farmer's medical records and scans. Concerned by her ongoing visual and dizziness complaints, Dr. Parsioon referred her to an ophthalmologist and an otolaryngologist. He completed work status forms on March 27 and April 6 restricting Ms. Farmer from working.

Ophthalmologist Dr. Philip Furr examined and tested Ms. Farmer's eyes. He found "no evidence of eye injury or sequelae from her closed head injury[.]"[2]

A month later, Ms. Farmer underwent VNG testing with an audiologist that showed "unilateral weakness in the right ear suggestive of a right peripheral vestibular deficit. Cannot rule out insult to the right labyrinth as a result of head injury with concentrated force on the right side of the head."[3]

After receiving abnormal VNG results, Ms. Farmer began treating with otolaryngologist Dr. Mark Milburn. He referred her to vestibular rehab. Two months later, she returned to Dr. Milburn, who assessed "right sided vestibular loss – functional improvement with rehabilitation." He ordered repeat testing that showed worsened caloric results, so she returned to Dr. Milburn.

Ms. Farmer told Dr. Milburn that she frequently felt dizzy and was unable to work. He recorded a normal objective physical examination and that she had "minimal risk of fall." Dr Milburn told Ms. Farmer to continue home exercises and "sedimentary activities." He recommended repeat caloric testing in ninety days and follow-up afterward.

When Ms. Farmer returned to Dr. Milburn, he concluded "resolving vestibular concussion. Repeat caloric testing reveals normal limits. Will release patient to regular activity." Based on Dr. Milburn's note, ACS terminated temporary disability benefits.

Ms. Farmer ultimately came under the care of neuropsychologist Dr. Brandon Baughman "to determine safety to return to work and current cognitive functioning." Dr. Baughman noted Ms. Farmer's symptoms had improved, but she was not sure if she was prepared to return to work. Ms. Farmer reported dizziness, physical and mental fatigue, as well as poor short-term memory and peripheral vision. After evaluation and testing, Dr Baughman determined "there were no neuropsychological contraindications to return to work. As such, Ms. Farmer may benefit from a graduated return to the workplace" through a "transition period." He further stated, "Collaboration between Ms. Farmer and supervisors in reintroduction of job responsibilities may prove mutually beneficial during

---

[2] Dr. Furr diagnosed uveitis in her right eye unrelated to her work injury.

[3] The May 11, 2017 test results were not provided by the parties, but the audiologist referred to the outcome of the test in her August 4, 2017 office note.

2

transition period." He also recommended a neurology assessment.

Ms. Farmer returned to Dr. Parsioon on May 24 with continuing symptoms. He completed another work status form noting Ms. Farmer "stays off work" and referred her to neurologist Dr. Subir Prasad for a second opinion. Dr. Prasad diagnosed post-traumatic chronic headaches and prescribed medication.

Ms. Farmer's headaches improved with medication, but Dr. Prasad suspected she had developed rebound headaches. He told her to increase her medication as tolerated and taper off if the headaches resolved. Dr. Prasad released Ms. Farmer from his care with no impairment or restrictions.

Ms. Farmer returned to Dr Parsioon, who placed her at maximum medical improvement with no permanent impairment. He completed a work status form that Ms. Farmer "has now recovered sufficiently to return to work as of 9-17-18 with regular duties with no restrictions."

The parties agreed to a weekly compensation rate of $306.98. However, they disagreed on the amount of temporary disability benefits and the extent of her permanent disability.

At the hearing, Ms. Farmer testified Dr. Parsioon was her authorized treating physician and coordinated care and referrals to other specialists. She pointed to Dr. Parsioon's work status notes that consistently kept her off work from March 27, 2017, until maximum medical improvement on September 17, 2018. She asked for unpaid temporary disability benefits from October 31, 2017, to May 23, 2018, and from August 9, to September 17, 2018.

Ms. Farmer did not present any medical proof of a permanent medical impairment rating. Instead, she testified that she had continued headaches, dizziness, and instability, which prevented her from working.

ACS contended that it paid all benefits to which Ms. Farmer was entitled. It argued that it stopped temporary disability benefits on October 30, 2017, after Dr. Milburn released her to regular activity. ACS also relied on Dr. Parsioon's response to a letter from its counsel asking: "Based upon your medical records and the notes provided to you, would you agree to a reasonable degree of medical certainly (sic) and considering all causes that, Ms. Farmer had no permanent work restrictions in place as of October 30, 2017?" Dr. Parsioon answered, "Yes – None from my standpoint. Parsioon, MD 6-20-20." ACS further denied Ms. Farmer's entitlement to temporary disability benefits from August 9, 2018, to September 17, because Ms. Farmer was not restricted from work during that time.

3

ACS also disagreed that Ms. Farmer was entitled to permanent disability benefits because no treating physician found that she retained a permanent disability.

**Findings of Fact and Conclusions of Law**

Ms. Farmer must prove all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2019).

The Court initially considers Ms. Farmer's entitlement to temporary disability benefits for two periods: first, from October 31, 2017, through May 23, 2018, the period between Dr. Milburn's release to regular activity until Dr. Parsioon noted "stay off work" on May 24, 2018; and second, from August 9 through September 17, 2018, during Dr. Prasad's treatment until Dr. Parsioon released Ms. Farmer at maximum medical improvement.

To receive temporary total disability benefits, Ms. Farmer must show (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). TTD benefits terminate when an employee demonstrates the ability to return to work or attains maximum medical improvement. *Jones v. Crencor Leasing and Sales,* 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11. 2015). Temporary partial disability "refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* at *8. Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions and the employer either (1) cannot return the employee to work within the restrictions or (2) provides restricted work for a lower wage than the employee's average weekly wage, the injured worker may be eligible for temporary partial disability. *Id.*

The parties agreed that Ms. Farmer sustained compensable injuries on March 8, 2017, and did not return to work for ACS. ACS provided authorized treatment and paid temporary disability benefits except for the two periods at issue.

The Court finds Dr. Parsioon took Ms. Farmer off work after each visit from March 27, 2017, until September 17, 2018, when he released her to full-duty work without permanent restrictions. During that time, he referred her to an ophthalmologist and an otolaryngologist for visual and dizziness complaints. Dr. Furr reported to Dr. Parsioon that Ms. Farmer's eye problems were not related to her work injury. Dr. Milford diagnosed "right sided vestibular loss and referred to vestibular rehab for two months." He followed her until October 30, 2017, when he released her to normal activities with a resolving vestibular concussion and normal caloric testing.

4

The Court finds that Dr. Parsioon then referred Ms. Farmer to a neuropsychologist, who recommended a neurology assessment and a graduated return to work through a transition period. So, Dr. Parsioon made an appointment with Dr. Prasad. Again, Dr. Parsioon completed a work status form keeping Ms. Farmer "off work" on May 24, 2018. Dr. Prasad released Ms. Farmer on August 20 with no permanent impairment or restrictions. As requested, Ms. Farmer returned to Dr. Parsioon for her final visit on September 17 when he released her at maximum medical improvement.

Considering the totality of evidence, the Court holds Ms. Farmer proved entitlement to temporary disability benefits from March 27, 2017, to September 17, 2018, by a preponderance of evidence. Although Dr. Milburn and Dr. Prasad released her with limited to no restrictions after their assessments, Dr. Parsioon continued treating her without lifting his off-work restrictions until September 17. He expressed his concern in getting Ms. Farmer back to work in his referral to Dr. Baughman "to determine safety to return to work and current cognitive functioning" in April 2018, and he continued her off work restriction in May 2018 so he could order final testing before releasing her at maximum medical improvement.

Even assuming Ms. Farmer was assessed limited restrictions by various doctors during her treatment, she would be entitled to temporary partial disability benefits. The parties stipulated to Ms. Farmer's compensation rate of $306.98 per week. The unrebutted proof showed that Ms. Farmer did not work for another employer, and ACS offered no proof of an accommodation.

The Court finds Dr. Parsioon's June 20, 2020 response to the letter from ACS's counsel asking whether Ms. Farmer had *permanent* work restrictions on October 30, 2017, irrelevant to whether Ms. Farmer was entitled to temporary disability benefits before she reached maximum medical improvement. The medical records showed that on October 30, Ms. Farmer continued active treatment, and Dr. Parsioon did not address permanent restrictions until he released her in September 2018.

The Court holds Ms. Farmer is entitled to thirty-five weeks of unpaid temporary disability benefits from October 31, 2017, through May 23, 2018, and from August 9, 2018, through September 17, 2018, totaling $10,744.30 (35 weeks x $306.98 CR = $10,744.30.)

Regarding permanent partial disability benefits, Ms. Farmer did not produce evidence of permanent disability. None of her authorized physicians assessed a permanent medical impairment rating, and Dr. Parsioon specifically concluded that she retained no permanent impairment. As the Appeals Board explained, "absent a permanent medical impairment rating, there is no statutory mechanism by which a trial court can award permanent partial disability benefits." *Baumgardner v. United Parcel Serv.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 63, at *10-11 (Oct. 18, 2017). Therefore, the Court

5

denies Ms. Farmer's request for permanent disability benefits.

However, ACS agreed Ms. Farmer sustained compensable injuries. Therefore, she is entitled to future medical benefits even though she did not prove a permanent disability. *See Stephens v. Henley's Supply & Indus. Inc.*, 2 S.W.3d 178, 179 (Tenn. 1999). ACS must pay for reasonable and necessary future medical treatment causally related to the work injury. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A).

**IT IS, THEREFORE, ORDERED as follows:**

1. ACS shall pay Ms. Farmer a lump sum of $10,744.30, representing temporary disability benefits from October 31, 2017, to May 23, 2018 (29 weeks 2 days), and from August 9, 2018, through September 17, 2018 (5 weeks 5 days), at the weekly compensation rate of $306.98.

2. Ms. Farmer's claim for permanent partial disability benefits is denied.

3. ACS shall pay reasonable and necessary future medical expenses under Tennessee Code Annotated section 50-6-204 that are causally-related to Ms. Farmer's injuries of March 8, 2017. Dr. Parsioon shall remain the authorized physician for future treatment.

4. Unless appealed, this order shall become final thirty days after issuance.

5. ACS shall file a Statistical Data Form (SD-2) with the Court Clerk within five days of the date of this order becomes final.

6. The filing fee of $150.00 is taxed to ACS under Tennessee Compilation of Rules and Regulations 0800-02-21-.06 (August, 2019) to be paid within five business days of the date of this Order.

**ENTERED October 8, 2020.**

_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice (February 4, 2020) along with additional issues raised by the parties
3. Request for Scheduling Hearing
4. Scheduling Hearing Order
5. Dispute Certification Notice (August 14, 2020)
6. Employee's Pre-Compensation Hearing Statement
7. Employer's Exhibit List
8. Employer's Pre-Compensation Hearing Statement
9. Employer's Compensation Hearing Brief
10. Employer's Table of Contents of Medical Records Submitted for Compensation Hearing
11. Employee's Proposed Exhibits for Rebuttal to Employer's Proposed Exhibits for Compensation Hearing

Exhibits
1. Employee's Proposed Exhibits for Rebuttal to Employer's Proposed Exhibits for Compensation Hearing (Collective)
    a. Dispute Certification Notice (February 4, 2020)
    b. Additional Issues Submitted by Employee
    c. Documents submitted by Employer during mediation
    d. Documents submitted by Employee during mediation
    e. Medical Records and Table of Contents filed by Employer on August 26, 2020
    f. Employee's responses to Employer's First Set of Interrogatories and Request for Production of Documents

Stipulations
1. Ms. Farmer sustained an injury by accident while in the course and scope of her employment with Employer.
2. Mr. Farmer's date of injury is March 8, 2017.
3. Mr. Farmer gave notice of the injury to Employer on March 8, 2017.
4. Ms. Farmer is 63 years old and a resident of Shelby County, Tennessee.
5. Ms. Farmer has a bachelor's degree.
6. Ms. Farmer received authorized medical treatment from the following providers: Drs. Fereidoon Parsioon, Mark Milburn, Phillip Furr, Subir Prasad, Brandon Braughman, and Laura Mutchler.
7. Medical expenses were paid by Employer or its workers' compensation carrier/administrator.

8. Ms. Farmer reached maximum medical improvement per Dr. Parsioon on September 17, 2018.
9. Ms. Farmer received temporary disability benefits.
10. Ms. Farmer has not returned to work for Employer.
11. Ms. Farmer's average weekly wage is $460.47, and her compensation rate is $306.98.
12. Ms. Farmer received a 0% impairment rating to the body as a whole from Dr. Parsioon.
13. This claim is governed by the workers' compensation laws for the State of Tennessee.
14. An employment relationship existed between the Employee and Employer at all relevant times.
15. Ms. Farmer provided proper statutory notice of the injury.
16. Ms. Farmer filed a Petition for Benefit Determination within the applicable state of limitations.

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on October 8, 2020.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|---|---|---|---|---|
| **Vernetta Farmer, Employee** | | | X | vernettafarmer@gmail.com |
| **Rosalia Fiorello, Employer's Attorney** | | | X | rfiorello@wimberlylawson.com |

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____
*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  Docket No.: _____  Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____  ☐ Employer ☐ Employee

Appellee's Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*